NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FEDERATED MUTUAL INSURANCE COMPANY, a/s/o MIKE ZYNDORF, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF OCEAN CITY, N.J.,<br><br>　　　　　Defendant. | Civ. No. 19-21405<br><br>**OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motions for Summary Judgment filed by Plaintiff Federated Mutual Insurance Company ("FMI" or "Plaintiff") (ECF No. 32) and Defendant City of Ocean City, NJ ("Ocean City" or "Defendant") (ECF No. 31). The Court has decided the Motions based on the written submissions of the parties and without oral argument, pursuant to Local Rule 78.1(b). For the reasons stated herein, both Motions (ECF Nos. 31, 32) are DENIED.

## BACKGROUND

### I.  Factual Background

The following facts are undisputed unless otherwise noted. In January 2017, Mike Zyndorf, LLC ("Zyndorf") leased a dump truck to Defendant Ocean City. (Pl.'s Statement of Undisputed Material Facts ("SUMF") ¶ 4, ECF No. 32-1.) In February 2017, the truck caught

fire and injured an Ocean City employee, Richard Hardin ("Hardin"). (*Id*. ¶ 28.) This case is a dispute between Zyndorf's insurer, FMI, and Defendant Ocean City.

      A.    *The Rental Agreement*

Zyndorf and Ocean City executed a lease (the "Rental Agreement") on January 27, 2017. (*Id*. ¶ 4.) Under the Rental Agreement, Zyndorf leased a 2005 John Deere 250D articulated dump truck (the "truck") to Defendant Ocean City for a period of one month. (*Id*.) Zyndorf did not extend any warranties and leased the truck in "as is" condition. (*Id*. ¶ 8.) The Rental Agreement required Ocean City to obtain liability insurance for the truck and inspect the truck on delivery. (*Id*. ¶¶ 12, 14.) Ocean City agreed to notify Zyndorf if the truck was damaged or malfunctioned so that Zyndorf could repair or replace the truck. (*Id*. ¶ 15.) Finally, an indemnification provision in the Rental Agreement promises that Ocean City will cover costs in a broad range of scenarios:

> Lessee [Ocean City] agrees to defend at its own expense, indemnify and hold Lessor [Zyndorf] harmless for any and all damages, losses, claims, costs and expenses (including reasonable attorney's fees) incurred by Lessor as a result of any injury to person, life or property caused by the Leased Property [the rental truck] or its operation while in the possession of the Lessee or any other person or entity possessing the Leased Property during the term of this Lease.

(Rental Agreement ¶ 15, ECF No. 31-5.) The parties dispute the proper interpretation of this provision.

      B.    *The Underlying Incident*

Zyndorf delivered the truck to Ocean City on January 30, 2017. (Pls.' SUMF ¶ 17.) Ocean City accepted delivery. (*Id*.) Ocean City planned to use the truck to haul sand for a beach replenishment project. (*Id*. ¶ 27.) On February 3, 2017, Ocean City contacted Zyndorf to report a "vibration" in the truck. (*Id*. ¶ 19.) A Zyndorf employee retrieved the truck, determined there was a crack in the truck's "torsional damper," and installed a new damper. (*Id*. ¶ 20.) The

2

Zyndorf employee then determined that the truck was functioning properly and returned the truck to Ocean City on February 7, 2017. (*Id*. ¶¶ 21,22.)

The Zyndorf employee returned the truck to Hardin, an Ocean City employee. (*Id*. ¶ 24.) Hardin and the Zyndorf employee test drove the truck. (*Id*. ¶ 24.) The parties dispute whether there was sand in the truck bed during the test drive. (*Id*. ¶ 24; Def.'s Counter Statement of Facts ¶ 24, ECF No. 38-1.) At a deposition, Hardin testified that the Zyndorf employee test drove the truck with him for a block without any sand in the truck bed. (Def.'s Ex. D at 62, ECF No. 31-6.) Hardin further testified that he told the Zyndorf employee that the truck was "running bad," and that Hardin had driven the truck the previous week and "this is not how it runs." (*Id*.) Hardin claims the Zyndorf employee told him that the truck was "fine" and to "just use it," and offered to come fix the truck again if necessary. (*Id*.)

On February 8, 2017, Hardin used the truck to complete the beach replenishment project. (Pl.'s SUMF ¶ 27.) During Hardin's first trip of the day, the truck burst into flames. (*Id*.) Hardin jumped six to seven feet from the cab of the truck to escape the smoke and flames (the "Underlying Incident"). (Def.'s SUMF ¶ 1, ECF No. 31.) Hardin was injured during the incident. (*Id*.) The Ocean City Fire Department then arrived on the scene and found the "cab and engine compartment fully engulfed in flames." (Pl.'s SUMF ¶ 30.)

The Ocean City Fire Department had its Fire Investigator complete an "Origin & Cause Report." (*Id*. ¶ 33.) The investigator performed a scene investigation, vehicle investigation, took photographs, interviewed fire department personnel and witnesses, and identified "potential hazards." (*Id*. ¶ 36.) The investigator was unable to determine the cause of the fire. (*Id*. ¶ 38.) Zyndorf's insurance company, Plaintiff FMI, also hired a fire investigator. (*Id*. ¶ 40.) That

3

investigator assessed numerous potential causes but could not determine the cause of the fire due to extensive damage in the engine compartment. (*Id*. ¶ 48.)

**II.     Procedural History**

In June 2017, FMI provided notice to Ocean City of multiple claims arising from the Underlying Incident and its intent to seek indemnity and defense coverage pursuant to the Rental Agreement. (*Id*. ¶ 50.) FMI followed up and sent correspondence to Ocean City in October, November, and December of 2017. (*Id*. ¶ 52.)

In February 2018, Hardin sued Zyndorf for negligence. (*Id*. ¶ 56.) In that case ("the Underlying Action"), neither Hardin nor Zyndorf joined Ocean City as a party. (*Id*. ¶ 59.) Hardin hired a liability expert, Michael A. Stichter, who testified that Zyndorf was at fault. (Def.'s SUMF ¶ 15.) The parties completed discovery and Zyndorf filed a motion for summary judgment. (Pl.'s SUMF ¶¶ 59, 60.) While that motion was pending, FMI and Zyndorf settled the Underlying Action with Hardin for $700,000, but did not admit liability on the part of Zyndorf. (*Id*. ¶ 65.)

In December 2019, FMI initiated the present action against Ocean City. (*Id*. ¶ 68.) FMI alleges that Ocean City breached the Rental Agreement when it failed to indemnify Zyndorf in the Underlying Action. (*See* Compl., ECF No. 1.) FMI seeks $762,580.95 for its costs in defending the Underlying Action, including the settlement amount. (Pl.'s SUMF ¶ 84.)

Ocean City moved to dismiss, arguing that the New Jersey entire controversy doctrine precluded this lawsuit. (ECF No. 7.) The Court denied Defendant's motion to dismiss. (ECF No. 11.) The parties engaged in discovery. In July 2021, the parties filed these cross-motions for summary judgment. (ECF Nos. 31, 32.) Each party opposed the other's motion. (ECF Nos. 34, 38.) Finally, each party replied. (ECF Nos. 36, 39.)

## LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The Court must grant summary judgment if any party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983).

## DISCUSSION

In Plaintiff's Motion for Summary Judgment, FMI argues that (1) The Rental Agreement requires Defendant Ocean City to indemnify Zyndorf for costs related to the Underlying Action; (2) Defendant failed to perform that obligation under the Rental Agreement; and (3) Defendant therefore owes Plaintiff $762,580.95 plus prejudgment interest. In Defendant's Motion for Summary Judgment, Ocean City argues that (1) the indemnification provision is not enforceable; (2) the New Jersey Tort Claims Act (NJTCA) bars subrogation claims against public entities; and

(3) the New Jersey Entire Controversy Doctrine requires that the Court grant summary judgment in favor of Defendant.

For the reasons stated herein, the Court denies Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment.

**I.      Breach of Contract and Indemnification**

Plaintiff argues that Defendant breached the Rental Agreement by failing to indemnify Zyndorf for costs in the Underlying Action. The parties agree that the Rental Agreement was a valid contract, but contest whether Defendant breached the Rental Agreement when Ocean City refused to indemnify FMI for the settlement amount in the Underlying Action. Thus, the Rental Agreement's indemnification provision is the crux of the dispute as to both the indemnification claim (Count I) and the contractual claim (Count II).

      A.      *The Indemnification Clause*

The indemnification provision in the Rental Agreement promises that Ocean City will cover costs in a broad range of scenarios:

> Lessee [Ocean City] agrees to defend at its own expense, indemnify and hold Lessor [Zyndorf] harmless for any and all damages, losses, claims, costs and expenses (including reasonable attorney's fees) incurred by Lessor as a result of any injury to person, life or property caused by the Leased Property or its operation while in the possession of the Lessee or any other person or entity possessing the Leased Property during the term of this Lease.

(Rental Agreement ¶ 15.) Plaintiff argues this provision, read in the context of the entire contract, requires Defendant Ocean City to indemnify Zyndorf for the settlement amount in the Underlying Action. Defendant argues this provision does not require Ocean City to indemnify Zyndorf for costs related to Zyndorf's own negligence.

"The New Jersey Supreme Court has emphasized that for an indemnitor to be found to indemnify the indemnitee for the indemnitee's own negligence, such an intent must be expressly

and unequivocally stated." *Darcy v. N.J. Transit Rail Operations, Inc.*, 2007 U.S. Dist. LEXIS 33989, at *6 (D.N.J. May 8, 2007). "Indemnity contracts are interpreted in accordance with the rules governing the construction of contracts generally. When the meaning of the clause is ambiguous, however, the clause should be strictly construed against the indemnitee. Thus, a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms." *Ramos v. Browning Ferris Industries, Inc.*, 103 N.J. 177, 192 (N.J. 1986) (citations omitted); *see also Mantilla v. NC Mall Assocs.*, 167 N.J. 262, 269 (N.J. 2001). ("[T]here is a presumption against indemnifying an indemnitee for its own negligence that can be rebutted only by plain language clearly expressing a contrary intent.") Moreover, in *Azurak v. Corporate Property Investors*, the Court clarified that "in order to allay even the slightest doubt on the issue of what is required to bring a negligent indemnitee within an indemnification agreement, we reiterate that the agreement must *specifically reference the negligence or fault of the indemnitee*." 175 N.J. 110, 112-113 (N.J. 2003) (emphasis added).

      The indemnification provision in this case does not "specifically reference the negligence or fault of the indemnitee." *Id*. The Rental Agreement's indemnification provision is broad and does not explicitly mention indemnification for costs related to Zyndorf's own negligence. Thus, the indemnification provision falls short of the "explicit" and "unequivocal" test established in *Ramos*, *Mantilla*, and *Azurak*. Plaintiff asks the Court to cobble together other provisions within the Rental Agreement—such as the requirement for Ocean City to obtain liability insurance and a "no warranties" clause—to prove it was the "intent of the parties to have Ocean City indemnify for the Underlying Action." (Pl.'s Opp'n at 10, ECF No. 34). The Court declines to do so. *Darcy*,

7

2007 U.S. Dist. LEXIS 33989, at *9 (finding a provision that required indemnitor to obtain insurance did not indicate intent to indemnify indemnitee for indemnitee's own negligence).

In sum, the New Jersey Supreme Court has been clear: "an agreement must specifically reference the negligence or fault of the indemnitee" to bring a negligent indemnitee within an indemnification agreement. *Azurak*, 175 N.J. at 112–13. This contract provision does not meet that standard. Thus, Ocean City did not agree to indemnify Zyndorf for Zyndorf's negligence.

B.  *Disputed Questions of Material Fact Remain*

Costs incurred by Zyndorf and FMI, in defense of Zyndorf's active negligence are not recoverable, but those costs incurred defending claims on which Zyndorf was only derivatively or vicariously liable are recoverable. *Central Motor Parts Corp. v. E.I. duPont deNemours & Co., Inc.*, 596 A.2d 759, 762 (N.J. Super. App. Div. 1991) ("*Central Motor II*") New Jersey takes an "after-the-fact" approach to determine whether the indemnitee had independent or vicarious liability in the underlying lawsuit. *Mantilla*, 167 N.J. at 273 (citing *Central Motor II*, 596 A.2d at 762). Typically, Courts look to trial verdicts or settlement agreements that apportion fault between the indemnitor and indemnitee. *Id*.

Here, the settlement agreement between Zyndorf, FMI, and Hardin did not apportion the liability between Ocean City and Zyndorf. In such cases, "the court hearing the indemnification claim will have to conduct proceedings in which the indemnitee will have the opportunity to prove (1) that it was the indemnitor's wrongful conduct that occasioned the claim against the indemnitee, (2) that the indemnitee was not independently liable to the injured person, and (3) that the indemnitee incurred legal costs defending its vicarious liabilities, and in what amount."

8

*Central Motor II*, 596 A.2d at 763.[1] Applied here, FMI must prove how much of the settlement amount stemmed from its defense of Ocean City's conduct. Under the Rental Agreement, Ocean City is responsible for that amount.

On the record presented, the Court cannot determine as a matter of law whether—or to what extent—Ocean City's negligent conduct occasioned Hardin's underlying claim against Zyndorf. For example, FMI argues that, in the Underlying Lawsuit, Hardin only alleged passive or vicarious liability against Zyndorf, *i.e.*, that Zyndorf was "merely stepping inside the shoes of Ocean City in the Underlying Action." (Pl.'s Opp'n at 11.) FMI further argues that experts could not determine whether Zyndorf had any role in causing the fire and that Ocean City had control of the vehicle prior to the incident. (*Id.*) At his deposition, however, Hardin testified that a Zyndorf mechanic test drove the truck with Hardin prior to the Underlying Incident and told him the truck was "fine." (Def.'s Ex. D at 62, ECF No. 31-6.) Moreover, Hardin's complaint in the Underlying Action sued Zyndorf for negligence and specifically cited the mechanic's representations that the truck was in good working order. (Pls.'s Ex. Q ¶ 16, ECF No. 32-22.) Thus, the question of liability is a genuine dispute of material fact that precludes judgment in favor of either party.[2]

---

[1] Both *Mantilla* and *Central Motor II* were cases in which the indemnitee sought to recover counsel fees from the indemnitor. This same procedure applies beyond the context of attorney's fees and requires the Court to determine the indemnitee's independent liability in a settlement agreement. *Toys "R" Us-Delaware, Inc. v. Tots in Mind, Inc.*, 2012 WL 529595, at *4 n.2 (E.D. Va. Feb. 17, 2012) (citing *Central Motor Parts Corp. v. E.I. duPont deNemours and Co., Inc.*, 596 A.2d 773 (N.J. Super. L. Div. 1989)) ("*Central Motor I*")

[2] While Courts can decide this issue as a matter of law, the record in this case does not support a finding in favor of either party as a matter of law. For example, in *Central Motor I*, the Court determined that the indemnitee had settled *only* its own independent negligence liability in the underlying suit. 596 A.2d at 743. There, the indemnitor had settled its liability with the underlying plaintiff *before* the indemnitee settled with the underlying plaintiff. *Id*. Therefore, the settlement between the indemnitee and the underlying plaintiff could only be for the

Going forward, FMI has the burden to prove "(1) that it was the indemnitor's wrongful conduct that occasioned the claim against the indemnitee, (2) that the indemnitee was not independently liable to the injured person, and (3) that the indemnitee incurred legal costs defending its vicarious liabilities, and in what amount." [3] *Central Motor II*, 596 A.2d at 763.

## II.     The New Jersey Tort Claims Act and Entire Controversy Doctrine

Defendant makes two legal arguments in favor of its Motion for Summary Judgment. First, Defendant argues that the New Jersey Tort Claims Act prohibits this lawsuit. Second Defendant argues that the Court should dismiss this case under the New Jersey entire controversy doctrine. The Court rejects both arguments.

### A.     *The New Jersey Tort Claims Act*

First, the New Jersey Tort Claims Act ("NJTCA") provides that "[n]o insurer or other person shall be entitled to bring an action under a subrogation provision in an insurance contract against a public entity or public employee." N.J.S. § 59:9-2. Defendant claims that this provision

---

indemnitee's independent liability to the underlying plaintiff, not the indemnitee's vicarious liability on behalf of the indemnitor. *Id*. Thus, the indemnitor was not required to cover the costs of the indemnitee's settlement with the underlying plaintiff because the settlement was for the indemnitee's independent liability. *Id*. at 744. Here, however, the indemnitor (Ocean City) was not a party to the original lawsuit or the settlement agreement and has not settled with the underlying plaintiff (Hardin). Therefore, the apportionment of liability between the parties in this case is unclear.

[3] Moreover, while "case law allows indemnification for settlement payments, it requires the indemnitee to demonstrate that (a) the indemnitee's claims are based on a valid, pre-existing indemnitor/indemnitee relationship; (b) the indemnitee faced potential liability for the claims underlying the settlement; and (c) the settlement amount was reasonable." *Chem. Bank of New Jersey Nat. Ass'n v. Bailey*, 687 A.2d 316, 320–21 (N.J. Super. App. Div. 1997) (citing *Central Motor I*, 596 A.2d at 773). As discussed, there are genuine disputes as to prong (a)—*i.e.*, what proportion of the settlement agreement is covered under the indemnification clause. The parties also have not addressed prong (c)—whether the settlement amount was reasonable. Thus, it would also be inappropriate to grant Plaintiff's Motion for Summary Judgment without such a showing.

10

bars Plaintiff's claim because Plaintiff's claim is brought against Ocean City—a public entity—under a subrogation provision in the contract between Plaintiff and Zyndorf. (Def.'s Mot. at 15.)

The NJTCA does not bar this claim. The NJTCA provides that "[n]othing in this act shall affect liability based on contract or the right to obtain relief other than damages against the public entity or one of its employees." N.J.S. § 59:1-4. Plaintiff's claim is a contractual dispute, not a tort claim. In other words, Plaintiff FMI seeks to enforce Zyndorf's alleged contractual right of indemnification against Ocean City. FMI is not stepping into Zyndorf's shoes to sue Ocean City in tort. While the Court recognizes that the indemnification proceeding described above seems like a negligence inquiry, *see* Part I.B *supra*, the underlying cause of action in this case is breach of contract. Therefore, the immunity from subrogation suit provided in the NJTCA does not apply here.

      B.    *The New Jersey Entire Controversy Doctrine*

The entire controversy doctrine is "essentially New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). The doctrine provides in pertinent part:

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine . . . .

N.J. Ct. R. 4:30A. Under the doctrine, "a party cannot withhold part of a controversy for later litigation even when the withheld component is a separate and independently cognizable cause of action." *In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008) (citing *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999)).

In determining whether a claim should be barred, "the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of

11

transactions." *Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 27 (N.J. 2015) (quoting *DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995)). Additionally, the entire controversy doctrine applies "only when a prior action based on the same transactional facts has been tried to judgment or settled." *U.S. ex. rel. Charte v. Am. Tutor, Inc.*, 934 F.3d 346, 352 (3d Cir. 2019) (quoting *Arena v. Borough of Jamesburg*, 706 A.2d 790, 792 (N.J. Sup. Ct. App. Div. 1998)). The entire controversy doctrine is "constrained by principles of equity" and does not bar claims "where to do so would be unfair in the totality of the circumstances and would not promote any of its objectives, namely, the promotion of conclusive determinations, party fairness, and judicial economy and efficiency." *Id.* (citations omitted). Thus, the doctrine's "application is flexible, with a case-by-case appreciation for fairness to the parties." *In re Mullarkey*, 536 F.3d at 229.

    While the New Jersey Supreme Court previously applied the doctrine to require joinder of parties as well as claims, *see, e.g.*, *Cogdell v. Hosp. Ctr. at Orange*, 560 A.2d 1169, 1178–79 (1989), the Court subsequently "authorized the elimination of mandatory party joinder under the entire controversy doctrine," *Ctr. For Prof'l Advancement v. Mazzie*, 347 F. Supp. 2d 150, 155–56 (D.N.J. 2004) (citing *K-Land Corp. No. 28 v. Landis Sewerage Auth.*, 800 A.2d 861, 867 (N.J. 2002)). Accordingly, mandatory party joinder now exists only "in special situations involving both inexcusable conduct . . . and substantial prejudice to the non-party resulting from omission from the first suit." *Id.* at 156.

    As discussed in the Court's Opinion on Defendant's Motion to Dismiss, the present suit has an overlapping factual basis with the Underlying Action. (Mot. to Dismiss Op. at 7, ECF No. 10.) Thus, the entire controversy doctrine may bar claims in the present case that could have been brought between the parties to the Underlying Action. However, Defendant was not a party to the Underlying Action. Therefore, the entire controversy doctrine does not apply, unless

Defendant can demonstrate inexcusable conduct and substantial prejudice resulting from its omission from the Underlying Action. *See Mazzie*, 347 F. Supp. 2d at 156.

"The concepts of inexcusable conduct and substantial prejudice are interrelated such that the existence of substantial prejudice will often serve to render the underlying conduct inexcusable." *Id.* at 156 (citing *Hobart Bros. Co. v. Nat'l Union Fire Ins. Co.*, 806 A.2d 810, 817 (N.J. Super. Ct. App. Div. 2002)). Substantial prejudice "means that a person not joined in an earlier action will be seriously harmed in his or her ability to maintain an adequate defense in a subsequent action." *Id.* (citing *Mitchell v. Charles P. Procini, D.D.S., P.A.*, 752 A.2d 349, 354 (N.J. Super. Ct. App. Div. 2000)). Delay alone does not serve to create substantial prejudice, but loss of witnesses, loss of evidence, and fading memories may. *Id*. A party's access to relevant information is largely dispositive of the substantial prejudice issue. *Id*.

While it is a close call, Defendant has not established substantial prejudice here. Defendant's chief complaint is that the failure to include Ocean City in the prior lawsuit deprived Defendant of the opportunity to hire an expert witness to evaluate the causes of the accident. (Def.'s Mot. at 19.) The inability to retain an expert can amount to substantial prejudice. *See TLC Services, LLC v. Devine Roofing & Constr., LLC*, 2019 WL 5824780 (N.J. Super. App. Div. Nov. 7, 2019). In this case, however, Defendant had access to the critical relevant information. As the Court noted when it previously rejected this argument during the Motion to Dismiss, "the examination of the rental truck and that the related report and findings were performed by Defendant's own fire department." (Mot. to Dismiss Op. at 7.) Thus, the Court cannot say that any prejudice was substantial enough to merit dismissal.

The Court recognizes that it would have been far more efficient for Plaintiff to have joined Defendant in the Underlying Suit and that the interests of judicial economy could warrant

dismissal in this case. However, preclusion is a remedy of last resort. *Hobart*, 806 A.2d at 819. Because of the specific factual circumstances in this case—namely, Defendant's access to critical information—that "last resort" remedy is not warranted here. *Id*.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 32) and Defendant's Motion for Summary Judgment (ECF No. 31) are DENIED. An appropriate Order will follow.

Date: <u>March 30, 2022</u>　　　　　　　　　　　　　　　　　　*/s/ Anne E. Thompson*　　　　
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　ANNE E. THOMPSON, U.S.D.J.